# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| HELIENE, INC., | : | Case No. 1:18-cv-799 |
| Plaintiff, | : | Judge Timothy S. Black |
| vs. | : | |
| TOTAL QUALITY LOGISTICS, LLC, | : | |
| Defendant. | : | |

### ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS (Doc. 2)

This civil action is before the Court on Defendant's motion to dismiss (Doc. 2) (the "Motion to Dismiss"), as well as the parties' responsive memoranda (Docs. 6–7).

## I. FACTS <u>AS ALLEGED</u> BY PLAINTIFF[1]

The Motion to Dismiss arises in the context of a shipping dispute. Plaintiff is a solar company, with its principal place of business in Ontario; Defendant is a logistics company, with its principal place of business in Ohio. (*See* Doc. 1 at ¶¶ 1–2, 5–6).

In February 2018, Plaintiff hired Defendant "to broker, [*i.e.*,] arrange for," the transportation of four trucks (containing solar panels) from Ontario to Iowa: BOL102765-6, BOL102765-7, BOL102765-8, and BOL102765-5. (*Id.* at ¶¶ 4–7). Plaintiff told Defendant to get the trucks across the U.S. border by February 6, 2018—so that it could avoid a duty/tariff effective February 7, 2018. (*Id.* at ¶ 7).

---

[1] For purposes of the Motion to Dismiss, the Court must: (1) view the Complaint in the light most favorable to Plaintiff; and (2) take all well-pleaded factual allegations as true. (Doc. 1); *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009).

Defendant told Plaintiff that it would meet this deadline in an email dated February 2, 2018. (*Id.* at ¶ 8; Doc. 1-1 at 2 ("Ok I will . . . make sure it all gets across the border on . . . Tuesday.")). And Defendant told Plaintiff that it had met this deadline in a text dated February 7, 2018. (Doc. 1 at ¶ 10; Doc. 1-1 at 10)). Nonetheless, none of the four trucks crossed the U.S. border by February 6, 2018.[2] (Doc. 1 at ¶ 11).

As a result of the delay, Plaintiff incurred over $60,000 in duties/tariffs, over $30,000 in lost profits, and over $20,000 in storage fees (in addition to other damages). (*Id.* at ¶¶ 12–16). On November 19, 2018, Plaintiff filed suit against Defendant, asserting fraud and breach of contract. (*Id.* at ¶¶ 17–23). On December 17, 2018, Defendant moved to dismiss Plaintiff's case, on the basis of preemption. (Doc. 2).

## II. STANDARD OF REVIEW

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) operates to test the sufficiency of the complaint and permits dismissal of a complaint for "failure to state a claim upon which relief can be granted." To show grounds for relief, Fed. R. Civ. P. 8(a) requires that the complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief."

While Fed. R. Civ. P. 8 "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Pleadings offering mere "'labels and conclusions' or 'a formulaic

---

[2] Two of the trucks crossed the U.S. border on February 7, 2018; two of the trucks are still sitting in Canada. (Doc. 1 ¶¶ 11–14).

recitation of the elements of a cause of action will not do.'" *Id*. (quoting *Twombly*, 550 U.S. at 555). In fact, in determining a motion to dismiss, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Further, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.*

Accordingly, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is plausible where a "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief,'" and the case shall be dismissed. *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

### III. ANALYSIS

In the Motion to Dismiss, Defendant argues that federal law—*i.e.*, 49 U.S.C. § 14706 and 49 U.S.C. § 14501(c)(1)—preempts Plaintiff's state law claims against Defendant.[3] (Doc. 2). The Court agrees in part: while federal law preempts Plaintiff's fraud claim, federal law does not preempt Plaintiff's breach of contract claim.

---

[3] Hereafter, the Court refers to 49 U.S.C. § 14706 as the "Carmack Amendment," and 49 U.S.C. § 14501(c)(1) as "section 14501(c)(1)."

3

**A. The Carmack Amendment**

The Carmack Amendment does not preempt either of Plaintiff's state law claims against Defendant.

The Carmack Amendment creates a "national scheme of <u>carrier</u> liability." *Exel, Inc. v. S. Refrigerated Transp., Inc.*, 807 F.3d 140, 148 (6th Cir. 2015) (emphasis added). It provides shippers with a cause of action against <u>carriers</u>, for loss sustained in connection with the transit of property. 49 U.S.C. § 14706(a)(1). And it preempts all state law claims on "the subject." *Adams Express Co. v. Croninger*, 226 U.S. 491, 505–06 (1913) (stating that the Carmack Amendment "embraces the subject of the liability of the carrier" so completely that it "supersede[s] all state regulation with reference to it").

However, the Carmack Amendment says nothing of <u>broker</u> liability. 49 U.S.C. § 14706(a)(1). Indeed, its provisions do not mention <u>brokers</u> at all. *Id.*

In light of this omission, courts in this Circuit have concluded that, while the Carmack Amendment preempts state law claims against <u>carriers</u>,[4] the Carmack Amendment does not preempt state law claims against <u>brokers</u>. *Universal Med. Sys., Inc. v. C.H. Robinson Worldwide, Inc.*, No. 1:12-CV-126, 2013 WL 12138550, at *3 (N.D. Ohio Feb. 6, 2013); *Schneider Elec., USA v. Landstar Inway, Inc.*, No. 1:11-CV-801, 2012 WL 3234244, at *1 (S.D. Ohio Aug. 7, 2012); *Mid-W. Materials, Inc. v. Packard Logistics, Inc.*, No. 1:05-CV-2045, 2007 WL 893890, at *3 (N.D. Ohio Mar. 22, 2007);

---

[4] Or, more precisely, "<u>shippers</u>' state law claims against carriers." *See Total Quality Logistics, LLC v. O'Malley*, No. 1:16-CV-636, 2016 WL 4051880, at *2 (S.D. Ohio July 28, 2016) (noting that the Carmack Amendment does not preempt <u>brokers</u>' state law claims against carriers).

4

*Oliver Prod. Co. v. Foreway Mgmt. Servs., Inc.*, No. 1:06-CV-26, 2006 WL 2711515, at *1 (W.D. Mich. May 24, 2006); *Delta Research Corp. v. EMS, Inc.*, No. 5:04-CV-60046, 2005 WL 2090890, at *7 (E.D. Mich. Aug. 29, 2005).

The "overwhelming majority" of courts in other Circuits have reached the same conclusion. *Atlas Aerospace LLC v. Advanced Transp., Inc.*, No. 6:12-CV-1200, 2013 WL 1767943, at *3 (D. Kan. Apr. 24, 2013) (holding that "the [Carmack] Amendment does not preempt claims against brokers"); *Chatelaine, Inc. v. Twin Modal, Inc.*, 737 F. Supp. 2d 638, 641 (N.D. Tex. 2010) (same); *Commercial Union Ins. Co. v. Forward Air, Inc.*, 50 F. Supp. 2d 255, 257–59 (S.D.N.Y. 1999) (same); *Custom Cartage, Inc. v. Motorola, Inc.*, No. 1:98-CV-5182, 1999 WL 89563, at *3 (N.D. Ill. Feb. 16, 1999) (same).[5]

A "carrier" is a motor carrier, water carrier, or freight forwarder. 49 U.S.C. § 13102(3). A "broker" is a "person, other than a motor carrier[,]" who sells, negotiates for, or holds itself out as selling transit by motor carrier. 49 U.S.C. § 13102(2).

---

[5] Notwithstanding the case law cited *supra*, Defendant asks the Court to hold that the Carmack Amendment preempts all "cargo claims" (*i.e.*, all claims arising in connection with the transit of property). (*See* Doc. 2 at 5). The Court declines to do so. As the Carmack Amendment only provides for carrier liability, what Defendant really asks the Court to hold is that shippers can <u>never</u> recover from brokers, for loss sustained in connection with the transit of property. (*See* Doc. 7 at 5 (claiming that Plaintiff has "no path to recovery" against Defendant)). Numerous courts have rejected this argument. *See Commercial*, 50 F. Supp. 2d at 257 ("[T]his case requires the court to decide whether the Carmack Amendment, in omitting reference to the liability of brokers for damage to shipped goods, intended to afford brokers total immunity from such a suit. The Court concludes that the Carmack Amendment does not bar suits against brokers."); *Custom*, 1999 WL 89563, at *3 (stating that the Carmack Amendment does not grant "entities which arrange for the transportation of goods absolute immunity for breach of contract or tort actions arising out of the interstate shipment of goods").

5

Here, there is no question that Defendant acted as a broker, with respect to the delivery at-issue. (Doc. 1 at ¶ 6 (alleging as much); Doc. 2 at 4 n.2 (confirming as much)). In light of this fact, and per the cases cited *supra*, the Court will not hold that the Carmack Amendment preempts Plaintiff's state law claims against Defendant.

**B. Section 14501(c)(1)**

Section 14501(c)(1) preempts one of Plaintiff's state law claims against Defendant, to wit: Plaintiff's fraud claim.

Section 14501(c)(1) preempts state-imposed trucking regulations. *Ware v. Tow Pro Custom Towing & Hauling, Inc.*, 289 F. App'x 852, 855 (6th Cir. 2008). It prohibits states from enforcing laws, regulations, or "other provision[s,]" "related to" the price, route, or service of a "broker," with respect to the transportation of property.[6,7] 49 U.S.C. § 14501(c)(1).

The United States Supreme Court interprets section 14501(c)(1)'s "related to" language broadly in favor of preemption. *Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 260 (2013) (stating that "related to" means having a connection with, directly or indirectly); *cf. Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383–84 (1992) (interpreting a near-identical provision of the Airline Deregulation Act of 1978).

---

[6] State common law constitutes an "other provision," within the meaning of section 14501(c)(1). *See Creagan v. Wal-Mart Transp., LLC*, 354 F. Supp. 3d 808, 812 n.2 (N.D. Ohio 2018).

[7] As stated *supra*, there is no question that Defendant acted as a broker, with respect to the delivery at-issue. (*See* Doc. 1 at ¶ 6 (alleging as much); Doc. 2 at 4 n.2 (confirming as much)).

As a general matter, section 14501(c)(1) preempts tort—but not breach of contract—claims. *See Nature's One, Inc. v. Spring Hill Jersey Cheese, Inc.*, No. 2:15-CV-2820, 2017 WL 4349065, at *2 (S.D. Ohio Sept. 29, 2017) (negligence claims preempted by section 14501(c)(1)); *Total Quality Logistics, LLC v. Lith Transp., Inc.*, No. 1:16-CV-789, 2016 WL 5476148, at *3 (S.D. Ohio Sept. 29, 2016) (breach of contract claim not preempted by section 14501(c)(1)); *see, e.g.*, *Chatelaine*, 737 F. Supp. 2d at 641 (holding that a shipper could bring a breach of contract claim—but not negligence claims—against a broker, after the broker failed to arrange for the timely delivery of goods).

The rationale is that, while section 14501(c)(1) preempts <u>state</u>-imposed obligations, section 14501(c)(1) does not preempt <u>self</u>-imposed obligations. *Solo v. United Parcel Serv. Co.*, 819 F.3d 788, 797–98 (6th Cir. 2016).

Here, Section 14501(c)(1) preempts Plaintiff's fraud claim. Plaintiff alleges that Defendant committed fraud, because Defendant told Plaintiff that the trucks had crossed the U.S. border by February 6, 2018—when, in fact, they had not. (Doc. 1 at ¶ 21). Plaintiff's allegations relate to the service Defendant provided Plaintiff as a broker. 49 U.S.C. § 14501(c)(1). Indeed, providing updates to clients is one of a broker's primary responsibilities. As Plaintiff's allegations relate to the service Defendant provided Plaintiff as a broker, Plaintiff's fraud claim is preempted.

In contrast, section 14501(c)(1) does not preempt Plaintiff's breach of contract claim. Plaintiff alleges that Defendant committed breach of contract, because Defendant agreed to get the trucks across the U.S. border by February 6, 2018—then failed to

7

arrange for the same. (Doc. 1 at ¶ 18). Plaintiff's allegations concern self- (not state-) imposed obligations. *Solo*, 819 F.3d at 797–98. Indeed, they arise from an email dated February 2, 2018 (the alleged contract). As Plaintiff's allegations concern self- (not state-) imposed obligations, Plaintiff's breach of contract claim is not preempted.[8,9]

## IV. CONCLUSION

Based upon the foregoing, the Motion to Dismiss (Doc. 2) is **GRANTED in part** and **DENIED in part**. Plaintiff's fraud claim is **DISMISSED with prejudice**. In all other respects, the Motion to Dismiss is **DENIED**.

**IT IS SO ORDERED.**

Date: 9/27/19

Timothy S. Black
United States District Judge

---

[8] At this time, the Court expresses no opinion on the validity of the alleged contract. (Doc. 1-1 at 2). Defendant moved to dismiss the Complaint on the sole basis of preemption. (Doc. 2 at 1). This Order has been decided on that sole basis.

[9] The parties argue over the contents of a document neither attached to nor referenced in the Complaint. (Doc. 6-1). The Court will not consider the contents of such a document in the context of this Motion to Dismiss. *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 487 (6th Cir. 2009) (stating that, as a general rule, a court cannot consider evidence extrinsic to the pleadings in the context of a motion to dismiss).